# Commonwealth *v.* Yost.

197       171
f 33 SC ¹158
197       171
f221      ¹304

197       171
37SC    259

*Water—Pollution of waters—Public and private nuisance.*

If the public have a right to receive pure water through the agency of a corporation legally authorized to take it from a stream, he who pollutes it offends against the public.   If, on the other hand, the water of a stream, in which riparian owners alone have an interest, be polluted, the wrong or injury is a private one, for which the individual or individuals injured may have redress ; and this is true whether the riparian owner be a private person or a water company which does not take the water from the stream under the right of eminent domain.   The rights of such owners are the same.

A person cannot be convicted on an indiciment for polluting the waters of a stream, where at the trial no evidence is offered by the commonwealth showing use by any one of the water of the stream, except that by a water company, which as a lower riparian owner had established a pumping station to supply a city with water, but had never exercised any right of eminent domain over the water of the stream.

*Board of health—Action of secretary—Indictment.*

Without formal action by the state board of health directing a nuisance or the cause of any special disease or mortality to be abated and removed, its secretary can neither speak nor act for it in ordering the abatement and removal of the nuisance ; and the disregard of an order so given is not indictable.

Argued May 22, 1900.   Appeal, No. 10, Jan. T., 1900, by defendant, from judgment of the Superior Court of Pennsylvania, to No. 37, March T., 1899, upon the appeal of the Commonwealth from the judgment of the Court of Quarter Sessions of York Co., Aug. T., 1898, No. 36, in case of Commonwealth v. George P. Yost.   Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Reversed.

Appeal from Superior Court.   See 11 Pa. Superior Ct. 338. The facts appear by the opinion of the Supreme Court.

*Error assigned* was in reversing judgment of the court of quarter sessions of York county.

*J. S. Black*, for appellant.—The public has no right to the use of the water of a private stream unless it has been acquired by the exercise of the power of eminent domain in accordance with the statute law.   Riparian owners only have rights in the stream: Haupt's App., 125 Pa. 211; Phila. & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418; Standard Plate Glass Co. v. Butler Water Co., 5 Pa. Superior Ct. 563; Irving v. Media Borough, 10 Pa. Superior Ct. 132.

Where the power to condemn water rights exists, if it is not exercised according to law, the corporation taking the water becomes a trespasser: Lord v. Meadville Water Co., 135 Pa. 122; Phillipsburg Water Co. v. Citizens' Water Co., 189 Pa. 23; Standard Plate Glass Co. v. Butler Water Co., 5 Pa. Superior Ct. 563.

A man who pollutes a private stream cannot be convicted of maintaining a public nuisance, and sentenced to abate the pollution, because a water company has found it to its interest to locate its pumping station on that stream, without a violation of his constitutional rights: Horn v. Miller, 142 Pa. 557; Mc-Callum v. Germantown Water Co., 54 Pa. 40.

The commonwealth having failed to prove the alleged public nuisance, it was the duty of the trial judge to affirm the appellant's ninth point.

The appellant is entitled to have the character of his act determined, not according to any abstract principle, but in the light of all the circumstances under which the act is done, its

place and surroundings, the time it has been maintained, etc.: Commonwealth v. Miller, 139 Pa. 77.

*Henry C. Niles,* with him *William B. Gemmill,* district attorney, *Joseph R. Strawbridge* and *George E. Neff,* for appellee.— There is no charm by which the designation of a stream as " private " can make it any less a crime to poison its waters to the danger of a whole city whose citizens have relied upon it as their source of supply for a half century.

OPINION BY MR. JUSTICE BROWN, July 11, 1900:

The indictment upon which the defendant was tried in the court below contains three counts. The first, charging him with the maintenance of a nuisance, is as follows : " George P. Yost, late of the said County, yeoman, on the twenty-eighth day of June, in the year of our Lord, one thousand eight hundred and ninety-eight, and upon divers days and times as well before as after said date, and before the taking of this inquisition, and within two years thereof, within the jurisdiction of this court, with force and arms, etc., in the Borough of Glen Rock, within said County of York, did erect, set up, establish, maintain, keep up and continue, and is now maintaining and continuing a common nuisance, to wit: a privy, cesspool and sewer, emptying into and connecting with the Codorus Creek, a public stream and watercourse in said County, along which, and below the place aforesaid, divers good citizens of the Commonwealth live, and from which they obtain and did obtain water, and from which divers other of said citizens obtain and are supplied with water for drinking and domestic purposes ; whereby the water of said stream was, and is impregnated, corrupted and made unwholesome to the great damage and common nuisance of the said citizens and of all of the people of the Commonwealth, contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

The only evidence in support of this count was, that the defendant had erected a privy, which drained into a small watercourse running through the town of Glen Rock and flowing into the south branch of the Codorus creek, and that the York Water Company, which we may assume to be a corporation,

though not so proven, had a pumping station on the south branch, about twelve or thirteen miles below the premises of the defendant, from which it pumped water polluted by the dejecta washed from the said privy into the stream. For the proper determination of what we regard as the main question before us, the maintenance of a public nuisance by the defendant, we may again assume, though not so proven, that the water so pumped from the creek by the York Water Company was used by it to supply water to its customers in the city of York for " drinking and domestic purposes." There was no proof, nor offer to prove, as laid in the indictment, that citizens living along the creek were supplied with water from it, except as the York Water Company, through its pumping station, may have furnished the same to them. If the public, having a right to take from this stream pure and unpolluted water, found in it the germs of disease, coming from the cesspool of the defendant, which he maintained on a tributary to the stream, his offense would be a public one, for which he would be properly indicted. The wrong would be against the whole community, as a community—not simply against an individual or certain individuals, however numerous—and ought to be punished as a crime. If the public have a right to receive pure water through the agency of a corporation legally authorized to take it from a stream, he who pollutes it offends against the public. If, on the other hand, the waters of a stream, in which riparian owners alone have an interest, be polluted, the wrong or injury is a private one, for which the individual or individuals injured may have redress ; and this is true whether the riparian owner be a private person or a water company which does not take the water from the stream under the right of eminent domain. The rights of such owners are the same : Lord v. Meadville Water Co., 135 Pa. 122 ; Philadelphia & Reading R. R. Co. v. The Pottsville Water Co., 182 Pa. 418.

No evidence was offered by the commonwealth showing use by any one of the water of the stream, except that by the York Water Company. There was no proof that this company possessed, and certainly none that it had ever exercised, the right of eminent domain in pumping the water. The proof was simply that it was a riparian owner on the south and west branches of the Codorus creek, and had erected a pumping

station on the former in the year 1896, from which alleged impure water was pumped.   It is true, that for very many years this company had pumped water from the Codorus creek, below the confluence of the south and west branches, but in the exercise of what right it did not appear; and nothing that it may have so done for upwards of fifty years at a point a considerable distance below, in the main stream of the Codorus, would, in itself, give it any rights superior to those of adjoining riparian owners at its pumping station on the south branch of the creek   Its rights were, under the evidence produced, as already stated, simply those of an ordinary riparian owner, having no ownership in the running water and no right to divert or sell the same for general use, whether pure or impure.   As an individual, it could complain of the alleged pollution of the water by the defendant, and any wrong done was done to it, and it alone, for which there was a civil remedy.   If it actually had the right to divert and sell the water from the stream for general and public use, the commonwealth was bound to show such right.   The defendant was in a criminal court, and nothing was to be presumed against him.   Before he could be convicted of any offense against the public, it was the duty of the commonwealth to show that he had offended against the rights of the public.   No such offense was proven; no right of the public to use the water pumped by the York Water Company was shown.   If anything was proven on the trial, it was that a riparian owner, the York Water Company, had undertaken to divert and sell water, alleged to have been polluted by the defendant, from the south branch of the Codorus creek, which was not even shown to have been a public stream.   In the absence of any proof that it had the right to do so, such right, in a prosecution of this kind, we repeat, cannot be presumed. The case, as presented to us for review, is one in which the waters of a stream may have been polluted by the defendant and were pumped out by a riparian owner for general use, but without any right on its part to so take and dispose of it.   The wrong done by the defendant, if any, was to such riparian owner, the York Water Company, in depriving it of the use of pure water for ordinary domestic purposes, and any wrong committed was a private one, for which the remedy was purely civil.

The learned judge below, on the trial of the case, seems to have clearly understood what was required of the commonwealth when he said, in ruling upon an offer of evidence: "It is a nuisance to cast any refuse or offensive substance into any stream, the waters of which are used for the purpose of drinking, or for culinary purposes, after the same have been legally taken for use by any municipality, or by any corporation for any municipality, to supply the people of that municipality with water. But there is no offer to show that this is the case, that this stream has been legally taken for that purpose. We think there should be an offer to follow with evidence of that fact. The offer is also objectionable in the fact that it is not proposed to be proven that the water is corrupted at the point at which it is taken for the use as drinking water by the people of York, or by any people, or any community which is involved in the results of this prosecution. There certainly must be some evidence to show that a nuisance has been committed, and that this water has been regularly taken and used for public purposes, that is, for purposes of furnishing water for drinking and for culinary purposes by the people, before the alleged commission of the offense. That must be proven undoubtedly." He should have consistently adhered to the views so expressed, and, when the commonwealth rested, without having proved what he so properly declared was incumbent upon it, he should have directed, as requested, a verdict of acquittal.

The defendant was acquitted by the jury, after having been directed by the court to pass upon the question of his guilt. They should have been told to acquit him, and the ninth point submitted by him should have been affirmed. The facts in evidence were either admitted or undisputed, and, having been insufficient to establish the guilt of the defendant, as charged, it was the duty of the court, on request, to direct a verdict of not guilty: Commonwealth v. Ruddle, 142 Pa. 144. As we are of one mind that the charge in the first count was not sustained, we need not consider the second or third, which were dependent upon it. We feel, however, that, as we cannot concur with the Superior Court in its view, as expressed by the learned judge speaking for it, as to the power and authority of the secretary of the state board of health, we ought to refer to what he says, lest our failure to do so be misconstrued as approving it. The

statute authorizes the board to act, and the learned trial judge in the court below correctly held that there could be no conviction on these two counts, because nothing had been shown except some action by the secretary. He very properly said: "We have ruled in that matter that there was no action of the state board of health in this case such as would warrant the conviction of the defendant on these two counts. . . . The state board of health should have a regular organized meeting of its board, decide upon a complaint, and then the secretary give notice." Without formal action by the board, directing a nuisance or the cause of any special disease or mortality to be abated and removed, its secretary can neither speak nor act for it in ordering the abatement and removal of the nuisance; and the disregard of an order so given is not indictable. In the absence of any action by the board as to a particular nuisance complained of, we cannot agree with the Superior Court, that because the duties of the secretary are defined by the by-laws and regulations, "he speaks for, acts for, and virtually is the board itself," in ordering the abatement and removal of the nuisance, even if, as in the case before us, he does so in the name of the board.

For the reasons stated, the defendant should have been acquitted, and we are compelled to sustain the first assignment of error on this appeal. The judgment of the Superior Court is reversed.