Opinion by
Head, J.,
The defendant was tried and convicted in the court below upon a bill of indictment charging, as is alleged, the common-law offense of unlawfully obstructing a public highway. The assignments of error raise no question of the correctness of any ruling admitting or rejecting evidence during the trial; of the sufficiency of the evidence, regarded in its entirety, to establish that offense; nor of the manner in which the learned trial court, in the charge, submitted to the jury the issues of fact raised by the pleadings and evidence.
They do, however, raise the broad question that the bill charges no offense indictable at common law. In the development of the supporting argument, the learned counsel for the appellant contend, first, that the bill itself discloses that the alleged obstruction or nuisance consists solely in the facts that *477 the railroad company has crossed, with its tracks, at grade, a public highway and is operating its cars over such tracks— both of which acts it is expressly authorized by law to do. Second, that the rights and duties of a railroad company, whose tracks cross a public road, are defined by statute, and hence, for any abuse of those rights or breach of those duties, no matter how the public using the highway may be affected, the remedy to check the abuse or punish the breach, must be founded on the statute.
The reasons why, in ancient times, great precision and nicety were required in the work of the criminal pleader, and, conversely, the reasons why, in modern times, the rules once prevailing have been abrogated, are stated, with great clearness, in the opening sentences of the opinion of Mr. Justice Agnew, in Com. v. Keenan, 67 Pa. 203. They have become familiar to every practitioner and have resulted in the provision, in our criminal procedure act, “ that every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the Act of Assembly prohibiting the crime, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury.”
If, therefore, an act, which from time immemorial, has been recognized by the common law and known and understood by the people, as a criminal act, for example, the obstruction of a public highway, be made the subject of indictment, there can be but little difficulty in so setting forth its substance “ that the nature of the offense charged may be easily understood by the jury.” In such a case, if in any, it ought to. be true that “an indictment is now little more than a simple statement of the offense, such as good sense and regard for the accused alone would suggest:” Com. v. Frey, 50 Pa. 245. “Whether the indictment .... might not have been framed with greater precision and certainty, .... need not be considered; we have only to determine whether it sets forth, with the requisite certainty, the essentials of the offense which it is designed to charge: ” Com. v. White, 24 Pa. Superior Ct. 178.
Neither the common law, our legislature nor our Supreme Court has undertaken to specifically define the acts constituting *478 the offense of obstructing a highway; but it has ever been held that any wrongful or unauthorized act by one in or upon the highway, by which the common right of the citizen to safely and freely use it, would be imperilled or seriously interfered with or obstructed, would exhibit the necessary ingredients of the offense. Manifestly, therefore, the offense may be committed not only by the unauthorized erection, on a public road, of a physical structure impeding public travel, but also by one who has the lawful right to use the highway, sub modo, but who undertakes to exercise that right in an unlawful way without regard to the equal rights of the public in their use of it. It is towards such an alleged unlawful abuse, by the defendant, of its right on the public road that the indictment, in our opinion, was aimed.
After averring the existence of the defendant corporation, under the laws of the state, and of the highway alleged to have been obstructed, the indictment charges that the defendant, “ in and across the public highway .... unlawfully did keep and maintain a railroad track and way and did use the said track and way for the frequent and rapid passing and repassing of- trains, whereby the use of the said road was and continues to be dangerous, obstructed and straitened so that the good citizens could not and have not been able since to pass and re-pass as they ought and of right should and were wont to do,” etc. The absence of any language descriptive of the physical structure erected by the defendant is significant and indicates that it is not the existence of that structure on the highway that is complained of. It is the alleged unlawful use of that structure that is charged, and such use is said to be not merely the passing of trains over the tracks without more, but a passage of them, “ whereby the use of said road was and continues to be obstructed,” etc; i. e., such a use of the track in passing trains over it that thereby the ordinary, lawful use of the road was obstructed, etc. If this be the fair construction of the language used, giving to the words their ordinary meaning and requiring certainty only to a common intent, the indictment cannot be justly criticised on the ground that it fails to disclose the essentials of the common-law offense of obstructing *479 a highway. It may be conceded the pleader might well have been a little more explicit as to the manner and character of the use intended to be charged -as unlawful. But the remedy for any lack of detail in the bill was not a motion to quash in limine, and in arrest of judgment after an adverse verdict, but was an application for a bill of particulars: Williams v. Com., 91 Pa. 493; Com. v. New Bethlehem Borough, 15 Pa. Superior Ct. 158.
If, then, the indictment fairly charges an offense at common law, is it an offense of which a railroad corporation, duly created and existing under the laws of Pennsylvania, may now be convicted? The common law, where not superseded or abrogated by statute, is still a part of the law of the land and is binding not only on natural persons but as well upon these artificial persons whose very existence is derived from the creative energy of the law itself. “ It is well recognized law, that an indictment will lie against a corporation, not municipal, for the creation and maintenance of a public nuisance:” Northern Central Ry. Co. v. Com., 90 Pa. 300. The indictment in the present case would therefore lie against the defendant corporation as well as against a natural person, unless the act of 1849, under which the defendant was incorporated and acquired its franchise, has undertaken to prohibit and punish the offense therein charged, in which event, we may agree, the indictment should be under the statute and not at common law.
By virtue of that act the defendant acquired the right of legal existence and the right to the use, sub modo, of the highways of the commonwealth. That the latter right was intended to be restricted, and not subversive of the general right of the community to the use of the highways, is shown by the language of the twelfth section of the act, wherein the necessary construction of a railroad track across a road or way is legalized, provided the company shall so “ construct the said road across such established road or way, as not to impede the passage or transportation of persons or property along the same.”
The statute has thus undertaken to define the nature and extent of the physical structure which a railroad company may lawfully build across a public way; and therefore where it *480 appears, that an alleged invasion of the public right consists in the fact, that the structure of the railroad has exceeded the statutory license, it may well be held that an indictment therefor should be for a violation of the statute rather than of the common law. But the statute has not undertaken to define or prescribe what shall constitute a lawful and proper use of the structure after it has been lawfully erected. That a railroad company may successfully plead its legislative license in answer to a charge that its roadbed, constructed as the statute ordains, or that such operation of its cars and trains over that roadbed as is necessarily or reasonably incident to the performance of its corporate functions, constitutes a public nuisance, is, we think, unquestioned. But that such a corporation may so arbitrarily and unreasonably exercise its right to operate cars and trains as to create a public nuisance, of a character both annoying and dangerous, we see no reason to doubt. “ A railroad company is liable for a nuisance where the running of its trains' on the Sabbath is accompanied with such ringing of bells, blowing off of steam and other noises in the neighborhood, of a church during public worship as to annoy and molest the congregation:” Church v. R. R. Co., 5 Barb. (N. Y.) 79. “ Where the legislature authorizes an act which does not necessarily result in a nuisance but such a result flows from the manner in which the act is done, the legislative license is no defense:” Joyce on Nuisances, sec. 73. “Where a railroad intersects a street, if cars are allowed to remain standing upon the crossing for any unreasonable period, so as to be an obstruction to travel, a public nuisance will be thereby created:” Cincinnati R. R. Co. v. Com., 80 Ky. 137.
Many similar cases from many different states could be cited to show a wide recognition of the principle that the lawful right to operate trains and cars, in a reasonable way upon or across a public street or road, may be converted into an abuse which is an invasion of the public right and exhibits every quality of a public nuisance. Inasmuch as the statute of 1849 has not undertaken to define and prescribe the punishment for such a mischief, we see no reason why the present indictment should have been founded on that act.
*481 For the reasons here indicated as well as those so forcibly stated by the learned trial court we think the indictment was sufficient to support the conviction and sentence.
The appeal is dismissed at the costs of appellant and the record remitted to the end that the sentence imposed by the court of quarter sessions be carried into effect.