## Commonwealth *v.* Ashley Borough, Appellant.

*Nuisance—Waters—Pollution of stream—Contamination of air—Boroughs.*

On the trial of an indictment against a borough for polluting a stream by depositing therein excreta and other filth detrimental to the health of the good citizens, the commonwealth may show that by reason of the deposit of such filth the waters emitted foul and noxious odors destructive of the comfort and dangerous to the health of the people generally residing in the vicinity. Under such an indictment pollution both of water and air may be shown.

A municipality may be convicted of polluting the waters of a stream by depositing therein excreta and other filth, although at the trial no evidence is offered by the commonwealth showing use by any lower riparian owner, of the water of the stream for "drinking or domestic purposes."

Argued March 3, 1908. Appeal, No. 28, Jan. T., 1908, by defendant, from judgment of Q. S. Luzerne Co., Sept. T., 1904, No. 712, upon verdict of guilty in case of Commonwealth v. Ashley Borough. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Indictment for nuisance. Before LYNCH, P. J.

At the trial Dr. J. B. Tobias, a witness for the commonwealth, was asked this question:

" Q. In what condition did you find the stream? A. I found

the stream full of paper and mud and a very foul odor coming from it."

Defendant's counsel object and ask that the answer be stricken out.

The Court: He may testify to that.  " Q.  Tell what you found there? "

Objected to, objection overruled, question allowed, exception noted and bill sealed for defendant. [1]

" A.  I found a bad odor from the stream.  I found the stream containing a good many waste papers, and the water was cloudy, dark colored and a bad odor; could be observed from the banks of the stream."

Mr. Welles, sworn for defendant.

Defendant proposes to prove by the witness on the stand, the borough engineer, that the day before yesterday he made a survey of the stream called Solomon's creek and its tributaries, and found below the point where the Ashley sewer enters, a slaughter house sending fleshings, blood and other filth into the stream; and below that he found a stream which passes through the city of Wilkes-Barre from beyond Empire colliery and down through the Fourteenth ward and the Thirteenth ward, entering into the stream, which also contained all kinds of filth, waste water and excreta, and below that he found a fifteen-inch sewer of the city of Wilkes-Barre entering the stream, and below that and before it reaches the point where this complaint starts, other nuisances.

Commonwealth objects to the evidence offered because the alleged nuisance complained of here was that which existed on September 9, 1904, and previous thereto, and any evidence as to the condition of the stream or sewers along the stream, or nuisances now existing, would not be relevant, it being subsequent to the time of the indictment.  Objection sustained. [2]

The court charged in part as follows:

[It is said the sewage from this town of about 4,500 inhabitants is emptied into Solomon's creek.  The witnesses upon the part of the commonwealth testify that especially in low water, the offensive odor and noxious air that arise from this

stream is not only a discomfort, but a positive menace to the health of the people.  If you believe this evidence, there can be no question about the guilt of this municipality.] [3]

[It is conceded this stream was polluted, that it was made foul, in part, at least, by the sewer of this municipality.  Witnesses upon the part of the commonwealth have testified that people's health and comfort are seriously affected by reason of this pollution.] [4]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–4) above instructions, quoting them.

*John M. Garman*, with him *Charles E. Keck*, for appellant.—Precision in the description of the offense is of the last importance to the innocent; for it is that which marks the limits of the accusation, and fixes the proof of it: Hartmann v. Com., 5 Pa. 60.

As the indictment did not contain an intimation of any other nuisance than pollution of the waters, the defendant could not imagine that she could be tried for a different matter: Com. v. Yost, 197 Pa. 171; Lord v. Water Co., 135 Pa. 122; Phila. & R. R. R. Co. v. Water Co., 182 Pa. 418.

*Abram Salsburg*, district attorney, with him *John H. Dando*, and *C. F. McHugh*, for appellee.—A municipality in pursuing a public work is not privileged to commit a nuisance, and if it does it is liable to a private individual in damages, or to prosecution at the instance of the state where the nuisance is public. A municipal corporation has no more power to injure private property, or to create a nuisance thereon, than a natural person: Mayor, etc., of Knoxville v. Klasing, 76 S. W. Repr. 814; Reading Iron Works v. Borough of South Chester, 2 Del. County Rep. 455; State of Maine v. Portland, 74 Me. 268; Com. v. Keenan, 67 Pa. 203; Election Cases, 65 Pa. 20.

Notwithstanding this liberality of pleading the rule undoubtedly is, that an indictment must show that an offense has been committed, and, if at common law, must describe the same

"so plainly that the nature of the offense charged may be easily understood by the jury." This is the test by which the sufficiency of the indictment is to be determined: Williams v. Commonwealth, 91 Pa. 493, 502; Commonwealth v. Swallow, 8 Pa. Superior Ct. 539, 614; Commonwealth v. McCoy, 10 Pa. Superior Ct. 598.

The pollution of a stream affecting the public is a crime: Watson v. New Milford, 72 Conn. 561 (45 Atl. Repr. 167); Commonwealth v. Yost, 197 Pa. 171.

OPINION BY HEAD, J., October 12, 1908:

The defendant, the borough of Ashley, was convicted in the court below of maintaining a common and public nuisance. The bill of indictment charged that the defendant "unlawfully did erect, maintain, etc., a certain sewer for the purpose of carrying the waste water, excreta and other filth from the said borough into Solomon's creek whereby said creek becomes polluted and thereby detrimental to the health of the good citizens, etc., who cannot thereabout reside without great inconvenience, danger, injury and annoyance, to the great and common nuisance, etc." The defendant made no motion to quash nor request for a bill of particulars, but went to trial on the plea of not guilty. The pollution of the stream in the manner charged was fully proven and indeed was not denied. The commonwealth further proved that by reason of these deposits of filth in the stream, its waters emitted foul and noxious odors which were not only destructive of the comfort but also dangerous to the health of the people generally residing in that vicinity. The defendant objected to the admission of such testimony and, in the first of the two questions presented for our consideration, attacks the rulings of the court permitting it, because the indictment charges the pollution of water and not of the air, and hence, argues the defendant, it came prepared to show that nobody could be injured by the defilement of the water as nobody used the water, and was surprised and taken at a disadvantage by the line of evidence admitted over its objections. We do not find the argument convincing.

In Com. v. B. & Q. R. R. Co., 35 Pa. Superior Ct. 474, we en-

deavored to set forth, at some little length, the reasons why the great precision and nicety that characterized the work of the criminal pleader in early days were no longer required. We need not repeat those reasons here. The act of the defendant intended to be complained of was the befoulment of the stream by the deposit of filth therein and the commission of this act was plainly charged. The bill further averred that the defilement of the stream converted its waters into a menace to the comfort and health of the citizens and thus the act became a public nuisance.

The presence, in a community of human beings, of a body of water which has been caused or permitted to become filthy, is everywhere recognized as a source of danger to health and life. Whilst there may be many avenues along which the people may be brought into contact with such danger, there is none more familiar than the poisonous vapors which, under the operation of nature's laws, are constantly emitted by such waters. We do not think it was necessary that the bill should recount in detail the various ways in which the public became injuriously affected by the act charged. If the defendant could have shown any reasonable grounds for the apprehension that, owing to the general character of the averments in the bill, its defense could not be prepared without the undue labor and expense of providing against possible lines of attack that might never be made, a request for a bill of particulars would have brought all the relief necessary.

We must therefore answer the first of the two "questions involved" in the affirmative and the several assignments of error on this branch of the case are overruled.

The remaining question presented to us is thus stated in the printed brief: "Can a municipality be convicted for polluting the waters of a stream where, at the trial, no evidence is offered by the commonwealth showing use, by any lower riparian owner, of the water of the stream for 'drinking or domestic purposes'?" To answer this question in the negative, as we are urged to do, would require us to hold that the wrong to be redressed or punished by such a conviction was confined, (a) to the injuries suffered by lower riparian owners exclusively; and (b) only by

Such persons in that class as were proven, at the trial to have used the water for "drinking or domestic purposes." We know of neither principle nor authority on which such conclusions could rest.

It is doubtless true that where the waters of a stream have been polluted by a wrongful act, a lower riparian owner may share, in common with others who are not such owners, in some of the injurious consequences of the unlawful contamination. To that extent he suffers, not because he happens to be a riparian owner, but because he is a citizen, a unit in a community, with the right to demand that the health and comfort of that community shall not be threatened or impaired by the unauthorized act of any other person, natural or artificial. But he may, he often does, following such an unlawful act, suffer injuries which do not affect the people at large; which come to him because he is a riparian owner with the rights attached by the law to such ownership. Such injuries, however, are to be remedied or compensated by special action. Logically they should furnish no ground for a public prosecution.

Again, a pond or lake may exist in the heart of a populous community, the waters of which may come from their natural source at such a temperature, or so impregnated with mineral or alkaline deposits, as to be wholly unfit for "drinking or domestic purposes;" yet they may be entirely harmless. If a person should set up a contrivance by which there was poured, into such a body of water, a constant stream of filth, whereby that, which before was in no wise harmful, became a breeding place for poisonous germs that, borne by the winds, might carry pestilence and death to the homes of the people, can it be argued that such person could not be convicted of maintaining a most dangerous nuisance? Or could he successfully assert that the prosecution had failed because there was no proof that any one had ever used the water for "drinking or domestic purposes"?

The case of Com. v. Yost, 197 Pa. 171, furnishes no authority for the position here assumed by the appellant. In that case Yost was indicted for maintaining a public nuisance because he permitted the contents of a privy vault to drain into the small

tributary of a larger stream, upon which, at a point about thirteen miles below, the York Water Company had erected a pumping station. There the company took the water from its natural channel, transported it to the city of York and sold it to the citizens. It was not shown that the company had ever acquired any right to thus divert the water. It was neither alleged nor proven that the water had become so far contaminated as to in any way affect the comfort or imperil the safety of any, save those who might use it for drinking or domestic purposes. As the case was tried no right whatever, natural or acquired, was shown to exist in the citizens of York or in the public generally, to take the water from the stream and make such use of it. Had such right existed the court plainly declares the act of Yost would have been an invasion of that public right and thus indictable. But as it was, the only rights assailed by the alleged contamination were the private rights of the water company or other riparian owners and, as a consequence, no ground existed for an indictment, which must rest upon the commission of a public wrong. The doctrine of the case, we think, is fairly declared in the following language of Mr. Justice Brown, viz.: "If the public have a right to receive pure water through the agency of a corporation legally authorized to take it from a stream, he who pollutes it offends against the public. If, on the other hand, the waters of a stream, in which riparian owners alone have an interest, be polluted, the wrong or injury is a private one, for which the individual or individuals injured may have redress." The entire opinion, as we read it, strongly points to the conclusion that, under the facts established in this record, a conviction for maintaining a public nuisance ought to be sustained.

We must therefore hold that the indictment sufficiently charged the offense; that upon the trial it was proper for the commonwealth to show, by testimony, the character and extent of the pollution and the manner in which its citizens were affected by the continued existence of such a contaminated stream in their midst; and that in the acts of which the defendant has been convicted, there can be found every essential element of a public nuisance.

As suggested by the learned counsel for the appellant, the disposition of the two questions already considered, makes it unnecessary to take up in detail the several assignments of error which bring upon the record the matters out of which the questions arise.

The assignments of error are all overruled, the judgment is affirmed and the record is remitted to the court below that the sentence may be carried into execution.