# Dixon *v.* Sheffer, Appellant.

*Health laws—Pollution of stream—Department of health—Notice—Appeals—Acts of April 22, 1905, P. L. 260, and April 27, 1905, P. L. 312.*

1. The privilege of discharging obnoxious sewerage into the waters of the state is a matter of public concern, and it is within the police power of the state to declare that this privilege is one which ought not to be exercised by private individuals, but only by the state or its governmental agents, the municipalities, acting under the direct control of the state.

2. The practice provided by the Acts of April 22, 1905, P. L. 260, and April 27, 1905, P. L. 312, of notice from the commissioner of health to persons polluting waters, and an appeal to the common pleas, is clearly within the authority given by the constitution of the state to the legislature in exercising its powers over all subjects on which legislation is not prohibited.

3. Where an owner of a manufacturing plant occupied by a very large number of employees permits the sewerage from toilet closets, used by the employees, to pass into a stream flowing through a thickly populated region, and furnishing to a large community all water used for domestic purposes, such owner will after notice from the commissioner of health and appeal to the common pleas, be ordered to abate the nuisance and discontinue the discharge of such sewerage.

Argued March 15, 1911. Appeal, No. 23, March T., 1911, by defendants, from judgment of C. P. York Co., Jan. T., 1910, No. 3, sustaining order of commissioner of health, and discharging appeal therefrom in case of

Samuel G. Dixon, Commissioner of Health, v. Benjamin F. Sheffer, Levi F. Sheffer, The Glen Rock Stamping Company, J. M. Grove, I. F. Grove and J. M. Grove. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from order of commissioner of health. Before WANNER, J.

The court found the facts to be as follows:

1. The South Branch of the Codorus Creek flows through the borough of Glen Rock, York county, Pa., about twelve miles above the point in said stream, at which The York Water Company, for fifteen years last past, has taken its water supply for the city of York. Its pumping station is located on its own land abutting on said stream.

2. Between the borough of Glen Rock, and said pumping station, said stream, which is of considerable size, flows through thickly settled agricultural territory, and its waters are applied to the ordinary uses of riparian owners.

3. From a date prior to the passage of the Act of April 22, 1905, P. L. 260, B. F. Sheffer and Levi Sheffer, two of the appellants, have been the owners of a certain lot of ground situate in said borough of Glen Rock, and having erected thereon a three-story manufacturing building.

4. The Glen Rock Stamping Company, one of the appellants, is a corporation which, since the year 1902, has continuously occupied the first floor of said building, as a tenant of the above-named owners thereof. J. M. Grove, president, I. F. Grove, treasurer, and L. C. Grove, secretary of said company, are also appellants in this case.

5. The second story of said building, since February 1, 1900, has been continuously leased and occupied by The Industrial Sewing Company, a partnership, composed of the appellants, J. M. Grove and H. E. Hildebrand, who employ from 130 to 150 women in said building, in the regular course of their business.

The third story of said building is occupied by parties

who are not appellants, or otherwise of record in this case.

6. There are separate privies, or water-closets, provided for each of the floors of said building, which have been used by the above-named companies and their respective employees, during the period of their several tenancies. From all of these privies sewage and human excrement, have, from time to time, been discharged into the said stream, during the tenancy of the above-named appellants, with their knowledge, and under their management of the premises. Such sewage was being so discharged from said premises at the time of the issuing of said order to the appellants to discontinue the same.

7. The discharge of said sewage from said privies into said stream by the appellants, had previously polluted, and at the time of the issuing of said order of said commissioner of health was still polluting the waters of said stream to such an extent that it had become dangerous, and was likely to become injurious to the public health, at the borough of Glen Rock, and at the city of York.

8. That the discharge of said sewage into said stream by the appellants, was likely to produce typhoid fever, dysentery, diarrhea, and other diseases amongst parties using said waters for drinking and other domestic purposes, and was also likely to spread typhoid fever amongst parties coming into contact with the contaminated waters, in the various ways specified by the expert witnesses in this case.

9. The York Water Company was duly incorporated under the provisions of the Act of February 8, 1816, 6 Sm. L. 319, and was also given authority to take water from convenient streams to supply to the citizens of York, Pa., by the Act of April 11, 1840, P. L. 300.

10. The remainder of the water of said stream not taken by said York Water Company for the York city supply, after joining the waters of the other branch of the Codorus Creek, flows through the city of York several miles below said pumping station.

11. A careful and extended inspection of the buildings and premises occupied by the above-named appellants and their tenants, and employees, and of the adjacent territory constituting the watershed of said stream, was made by duly authorized representatives of the commissioner of health, who reported to him the polluted condition of the waters of said stream, resulting from the discharge of sewage into the same by the appellants, substantially as hereinbefore set forth in these findings of fact.

12. In pursuance of said reports of his subordinates, and upon other information had, the commissioner of health, on July 23, 1909, issued an order directed to the appellants ordering them to discontinue the discharge of said sewage into said stream from the premises occupied by them in Glen Rock, Pa., within ten days after service of notice of the said order upon them.

All of the appellants were duly served with notice of said order, whereupon this appeal was taken.

The court dismissed the appeal.

*Error assigned* was in dismissing the appeal.

*J. S. Black*, with him *Spencer D. Wareheim* and *V. K. Keesey*, for appellants.—Neither of the acts gives the commissioner any power whatever to act or interfere in the case of a private nuisance or a wrong done by an upper riparian owner to a lower riparian owner: First National Bank v. Gruber, 87 Pa. 468; Timlow v. Philadelphia & Reading Railroad Co., 99 Pa. 284; Allegheny v. Nelson, 25 Pa. 332; Com. v. Yost, 197 Pa. 171.

*Henry C. Niles*, with him *Michael S. Niles, Charles A. May* and *George E. Neff*, for appellee.

OPINION BY ORLADY, J., April 17, 1911:

On July 23, 1909, the appellants in this case were severally served with a written notice issued by Dr. Samuel G. Dixon, commissioner of health of this commonwealth,

stating that in his opinion the discharge of sewage and the drainage of privies into the waters of a branch of Codorus Creek in the borough of Glen Rock, York county, from a building owned, occupied and used, as a factory or place for work by the appellants, "is now injurious to the public health, and that after an examination of the building and premises, he finds and adjudges that the privies so maintained and used are a nuisance, and nuisances detrimental to the public health," and each of the appellants was thereby ordered to abate and remove the same, and to discontinue the discharge of sewage, etc., within ten days and to not permit the same to flow into said waters, in accordance with the provisions of the Acts of April 22, 1905, P. L. 260, and April 27, 1905, P. L. 312.

The authority for, and the effect to be given to such a notice, is found in two acts of our legislature enacted in 1905, which are to be construed together as relating to the same subject-matter, and as integral parts of a new and comprehensive system for protecting the general public health of the commonwealth from such reckless disregard of public duty as is shown by this record. On several occasions within the past quarter century there have been in this state dangerous and fatal epidemics of disease which resulted in a great loss of life and which were directly traced to causes having their inception in similar conditions to those existing at the appellants' operations on Codorus Creek.

By the Act of April 27, 1905, P. L. 312 (eighth section) an act entitled "an act creating a Department of Health, and defining its powers and duties," it is made "the duty of the Commissioner of Health to protect the health of the people of the state, and to determine and employ the most efficient and practical means for the prevention and suppression of disease," and by the ninth section it is provided that he "shall have power and authority to order nuisances, detrimental to the public health, or the causes of disease and mortality, to be abated and removed, and to enforce quarantine regulations."

The Act of April 22, 1905, P. L. 260, is entitled "an act to preserve the purity of the waters of the state for the protection of the public health," and by the fourth section it is declared that "no person, corporation, or municipality shall place or permit to be placed, or discharge, or permit to flow into any of the waters of the state any sewage, except as hereinafter provided. . . . For the purpose of this act, sewage shall be defined as any substance that contains any of the waste products or excrementitious or other discharges from the bodies of human beings or animals." The ninth section declares that "Every individual, private corporation or company shall discontinue the discharge of sewage into any of the waters of the state, within ten days after being so ordered by the Commissioner of Health." And sec. 11 provides that "any order or decision, under this act . . . . shall be subject to an appeal to any court of common pleas of the county wherein the outlet of such sewer or sewer system, otherwise prohibited by this act, is situated; and said court shall have power to hear said appeal, and may affirm or set aside said order or decree, or modify the same, or otherwise fix the terms upon which permission shall be granted."

The constitutionality of the act of April 22, 1905, was determined after a full consideration of the subject in Commonwealth v. Emmers, 33 Pa. Superior Ct. 151, and the opinion of this court as written by Judge PORTER was affirmed by the Supreme Court, 221 Pa. 298, in which case it was held that, "the privilege of discharging obnoxious sewerage into the waters of the state is a matter of public concern, and it is within the police power of the state to declare that this privilege is one which ought not to be exercised by private individuals, but only by the state or its governmental agents, the municipalities, acting under the direct control of the state."

The contention of the appellants that Com. v. Yost, 197 Pa. 171, controls this case is without merit. That case was decided by the Supreme Court July 11, 1900, five years prior to the enactment under which this proceeding

is founded. It was there held that, "If the public have a right to receive pure water through the agency of a corporation legally authorized to take it from the stream, he who pollutes it offends against the public. If on the other hand, the water of a stream, in which riparian owners alone have an interest, be polluted, the wrong or injury is a private one, for which the individual or individuals injured may have redress: and this is true whether the riparian owner be a private person or a water company which does not take the water from the stream under the right of eminent domain," and under the facts of that case (in being an indictment for maintaining a common nuisance), the court held "The wrong done by the defendant, if any, was to such riparian owner, the York Water Company, in depriving it of the use of pure water for ordinary domestic purposes, and any wrong committed was a private one, for which the remedy was purely civil."

The facts in this case are radically different. It was shown on this trial, in such a way that it must be considered as regularly in evidence, that as early as February 8, 1816 (6 Sm. Laws, 319), the York Water Company was incorporated, and authorized to take water from this stream, and by a further supplement to that act, dated April 11, 1840, P. L. 300, the York Water Company was authorized to proceed to bring into the borough of York "such additional supply of water as they shall deem sufficient, from such spring or springs, stream or streams as they may select," etc.

True it is that these are private acts of assembly, and judicial notice is not ordinarily to be taken of them. However, in this case they were not only well known to the court and counsel, but they were used by the counsel on both sides on the argument of the case in the court below, and they are incorporated in the ninth finding of fact by the trial judge. With such acquiescence by appellants without any objection to such use it is now too late to say that they are not regularly in this record.

Two of the appellants are the owners of a three story

manufacturing plant, which is regularly occupied by 130 to 150 employees at least; toilet closets are provided for use of employees on each floor, from all of which sewage and human excrement have from time to time been discharged into the stream, with the knowledge and under the management of the owners and tenants of the premises, and were being so discharged at the time of issuing the notice to the appellants to discontinue such pollution.

The court finds as a fact, and upon abundant proof, that the discharge of such sewage from this property into the stream had previously polluted it, and was still polluting it to such an extent that it had become dangerous, and was likely to become injurious to the public health at the borough of Glen Rock and at the city of York, and further, that the discharge of said sewage by the appellants was likely to produce typhoid fever, dysentery, diarrhea and other diseases amongst parties using said waters for drinking and other domestic purposes, and was likely to spread typhoid fever amongst parties coming into contact with the contaminated waters.

These findings of fact and the direful results likely to follow such pollution, are not challenged, nor is it denied that such pestilential and contagious diseases are in fact developed and transmitted by just such practices as are charged against these defendants. This, therefore, is not a question of private injury, but of a grave public wrong. The case does not turn on the question whether the York Water Company is incorporated or not, or whether a riparian owner is injuriously affected, but it is to be considered in the light of the beneficent legislation which has been so wisely administered by a department of our state government: Com. v. Ashley Borough, 37 Pa. Superior Ct. 254. The preservation and protection of the public health is one of the first duties of civilized society and the department of health has been given very elastic powers to conserve the purposes of its creation. The commissioner of health, after a careful examination of the premises, decided that this factory, as maintained and used by the

owners and occupants, was a continuing menace to the public health. The testimony fully demonstrates the correctness of his conclusions, and the notices given to each and all the parties identified with this public nuisance were served upon the appellants severally. They took a joint appeal to the court of common pleas and after a full hearing the judgment of the commissioner was properly vindicated.

The same parties sued out their joint appeal to this court, as if they were jointly concerned in the offense. If they were separately affected by the decree they should have taken separate appeals. They cannot on a single appeal although taken by them jointly procure a review of the judgment of the court below upon their individual cases: Samson's Est., 22 Pa. Superior Ct. 93; May's Est., 22 Pa. Superior Ct. 77; Com. v. Surety & Guar. Co., 37 Pa. Superior Ct. 167. As no motion was made to quash the appeal for this reason we prefer to dispose of the question involved on its merits.

It is a mistake to say that the commissioner of health has no power to order the discontinuance of an admitted pollution of this stream of water, or to contend that the public has no rights therein. The first section of the act of April 22, 1905, declares that "the term 'Waters' wherever used in this act shall include all streams and springs and all bodies of surface and of ground waters, whether natural or artificial, within the boundaries of the state."

Codorus Creek is larger in its vent of water than some of our streams that are called "rivers" and it flows through a thickly populated section of the state, and from it a large community secures all the water used for domestic purposes.

The regulation of the practice of a summary proceeding, by notice from the commissioner of health, and an appeal to the common pleas was clearly within the authority given by the constitution of the state to the legislature in exercising its powers over all subjects on which legislation is not prohibited: Sharpless v. Mayor of Philadelphia, 21

Pa. 147; Com. v. Bell, 145 Pa. 374; Keller v. Scranton, 200 Pa. 130.

The case was carefully tried and the undisputed facts found by the court exhibit a flagrant disregard of public rights on the part of such of the appellants as have control over the pollution of this stream. The notice and order were regular and were founded upon sufficient cause. The assignments of error are overruled and the judgment is affirmed.