Shumkas, Appellant, *v.* P. & R. C. & I. Co.

Argued December 8, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*George C. Klauder,* and with him *Samuel Kagle,* for Appellant.

*B. D. Troutman,* and with him *George Ellis* and *Jno. F. Whalen,* for appellees.

OPINION BY LINN, J., December 27, 1930:

This appeal is from the refusal of a compensation award. Shumkas, a coal-miner, lost his life at work, August 6, 1925. A claim was filed on behalf of a widow and daughter December 7, 1925. Evidence was heard by a referee January 7, 1926, February 15, 1926 and March 24, 1927. Sections 411, 417, 427 of the statute require us to direct the attention of all who have to do with the administration of the Workmen's Compensation Law to the duty of disposing of compensation cases as promptly as may be.

June 3, 1927, the referee filed a report, holding that the alleged widow was not decedent's widow, and was therefore not entitled to compensation, but that his daughter, the other claimant, was dependent within the statute. Compensation was, however, refused on the following findings:

(3) That decedent, "was in the employ of the defendant company as miner on August 6, 1925. ...... and that ...... while he was tamping dynamite in a hole with an iron drill the dynamite exploded and instantly killed him;" and

(4) That he "transgressed rule 30, Article XII, of the Anthracite Mining Laws of Pennsylvania of 1891 [P. L. 199] and at the time of his death he was not in the relationship of employee to the defendant company. That is, by his own act he had [taken?] himself momentarily out of his employ."

Rule 30 of Article 12 of the Anthracite Mining Laws referred to is as follows:

"In charging holes for blasting in slate or rock in any mine, no iron or steel needle shall be used, and a tight cartridge shall not be rammed into a hole in coal, slate, or rock with an iron or steel tamping bar unless the ends of the tamping bar are tipped with at least six inches of copper or other soft metal." Rule 58 makes such violation a misdemeanor.

Claimants appealed to the board, excepting, inter alia, to findings 3 and 4 quoted above. The board agreed with the referee, refused compensation, and in the opinion filed, said: "Claimant contends that the testimony of decedent's working companion, John Bonasavage, was not sufficient to warrant the referee's findings that the decedent was tamping dynamite with an iron drill. Taking the witness's testimony in parts only we agree, but taking the witness's testimony as whole, and corroborated by the other testimony, we think it is clearly sufficient to show that decedent was using an iron drill for tamping the charge when killed." We may note, in passing, that we think that is a sound conclusion of law. On appeal to the common pleas, exceptions to the 3d and 4th findings were sustained; the action of the board was reversed, and the record was remitted for further hearing.

The following quotation from the opinion of the learned court below in disposing of the first appeal, will aid in understanding the record in view of the subsequent proceedings, in which a second opinion was filed in disposing of the second appeal from the board: "The board must specifically find the facts which bring the deceased within the rule of prohibition before the latter can be charged with having committed a criminal act. And before the decedent in this case can be charged with having committed a violation of rule 30, supra, it must be specifically found that he either was tamping dynamite in a hole in rock or slate with an iron or steel pointed needle, or that he was ramming a tight cartridge into a hole in coal, slate or rock with an iron or steel tamping bar that was not tipped with at least six inches of copper or other soft metal. A steel drill or iron bar, we believe, would come within the interpretation of an iron or steel pointed needle. We are not suggesting whether the evidence indicates that the decedent was tamping a

hole with dynamite with a bar or drill in coal but if the board or the referee should so find, then the decedent would not have violated rule 30, supra. There certainly is no evidence that the decedent was ramming a tight cartridge into a hole, for all the testimony in the case points to the fact that the decedent was tamping dynamite into the hole, without indicating whether the hole was in coal, slate or rock, the cartridge not yet having been handled by the decedent, it having been lately prepared by the eye witness to the accident.'' (In view of the second opinion of the learned court below, attention may be directed at this point to the statement that the court was then of opinion that the evidence showed that ''the cartridge [had] not yet ...... been handled by the decedent ......'' when the explosion took place.) The court therefore properly returned the record for re-hearing. At the re-hearing, no additional testimony was offered by the claimant. The employer, however, called a witness, apparently for the purpose of giving his understanding or interpretation of rule 30. His testimony was received subject to objection, and was returned to the board without additional findings of fact by the referee. The board then filed a second report, and, referring to this additional testimony, stated ''From our examination of the expert testimony we are of the opinion that it failed in its purpose.'' The board was right in disregarding the opinion of the witness; he was incompetent to interpret the statute; that is the duty of the court.

In its second report the board made, inter alia, the following finding: (a re-affirmation of the 3d finding originally made by the referee): ''That on this day and place, while tamping dynamite in a hole with an iron drill, the dynamite exploded, instantly killing him;'' and awarded compensation to the dependent child on the ground that the accident took place in

the course of employment within the statute, being also of opinion that the case was not within rule 30. The employer again excepted, inter alia, to the finding of fact quoted. The common pleas then filed an opinion again reversing the action of the board, but without remitting the record, having concluded that on the facts claimant was not entitled to compensation. Claimant has appealed and asks a review by this court on two points:

1. She asserts that there was no authority to modify the findings of fact by the additions made by the court.

2. That the court erred in holding that decedent violated the mining laws.

We must sustain the appeal. In its second opinion, the court properly says that the board "found as a fact that 'while tamping dynamite in a hole with an iron drill, the dynamite exploded, instantly killing him' which is supported by competent evidence." But —and here the dispute centers—the court added findings of fact; the right to make them is challenged by claimant. The supplementary findings appear by the following quotations from the opinion of the court on the second appeal. "The stick of dynamite with a detonation cap had been prepared by the witness Bonasavage, a fellow workman of the deceased, and he suggested that he 'go get a tamping stick', when the decedent said 'all right', and before the stick could be secured, the shot went off. The witness testified that the decedent was tamping the dynamite with the iron drill, that no tamping stick was there where they were working, and he told his superiors that the decedent 'used an iron drill to tamp the shot', tamped the dynamite with the drill and that he would not wait for the wooden tamping stick. He knew it was dangerous to tamp dynamite with an iron drill.

"The dispute in this case arises through the con-

tention of the claimant that the finding of the board [3d finding, quoted above] is to the effect that the decedent was tamping dynamite with an iron drill, while rule 30, supra, provides that a tight cartridge shall not be rammed into a hole with an iron tamping bar. Bonasavage, the witness, testified that the deceased was tamping dynamite and that he, the witness, had prepared the cartridge. The confusion is due to the interpretation of the meaning of the word 'cartridge'. A stick of dynamite is a cartridge, varied numbers of which are placed in a hole for blasting, so that the board actually found that the decedent was tamping a cartridge or cartridges. Into one cartridge or stick of dynamite, the cap or detonator and fuse are fastened. The stick of dynamite or cartridge into which the detonator cap was fastened was prepared by Bonasavage and that is all that can be inferred from his testimony. When he says that deceased was 'tamping the dynamite with an iron drill', he was saying in effect that the decedent was tamping sticks of dynamite or cartridges with an iron drill which is prohibited by rule 30, supra. 'Cartridge' is defined by the New Standard Dictionary, Funk & Wagnalls, as 'A charge * * * for blasting in a case or shell of metal, paper, pasteboard or cloth,' and by Webster's New International Dictionary 'A case containing an explosive charge to be fired by concussion, electricity, etc.' So that, under these definitions, every stick of dynamite is a cartridge. One of the cartridges used has a detonating cap placed in it by the miner and it was this cartridge which Bonasavage prepared. The board therefore found that the decedent met his death while 'tamping dynamite (cartridge) in a hole in coal with an iron drill'. 'Tamping', as defined by Webster's New International Dictionary, is the 'act of filling up a hole preparatory to blasting'; 'to drive in or down by a succession of light or medium blows';

while 'ramming' is the 'filling or compacting by pound-ing or driving'. Thus, the finding of the board is to the effect that the decedent met his death by ramming a tight cartridge into a hole in coal with an iron tamping bar, which is a clear violation of rule 30, supra.''

The second opinion of the learned court below is therefore inconsistent with the first, though the evidence is the same. The point now in controversy is the power of the court to add to the findings of fact. Some statement of the evidence therefore, seems desirable. The witness does not clearly say that ''a detonating cap had been prepared'' by him and delivered to the decedent, or that he had ''prepared the cart-ridge,'' and delivered it. His references to cartridges are the following:

''Q. Were you tamping the hole, too?

A. Making the cartridge.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Q. You were making a cartridge to put in his hole that the dynamite was put in?

A. Yes, sir.

Q. And William was putting the dynamite in?

A. Yes, sir.

Q. And was tamping the dynamite in the hole?

A. Yes, sir.

Q. What was he tamping the dynamite with?

A. I guess a drill.

Q. Was there a drill there?

A. No.

Q. Was there a tamping stick there?

A. No.

Q. Where was the tamping stick?

A. In the flat heading.

Q. Thirty feet away from the hole?

A. Yes, sir.

Q. Did you talk to William about tamping this shot?

A. Yes, sir.

Q. What did you tell him?

A. I say, 'I go get a stick', he said, 'all right, you go' and just then the shot went off."

We understand the following evidence of the witness to refer to their general practice and not to what was done at the time of the accident, though our understanding of this is not at this time conclusive on the compensation authorities because it is their duty to find the facts; when the record goes back, they may find otherwise from this or any additional supporting evidence, that may be produced.

"Q. Do you know that was the first shot he put in?

A. He is supposed to put in dynamite before the cartridges.

Q. And the cartridges go in after?

A. Yes, sir.

Q. I mean, was there any dynamite in that before he started tamping?

A. I guess."

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. When you were fixing the cartridge you were looking at the cartridge?

A. Yes, sir.

Q. And you looked at William, too while working?

A. I never looked at that time."

He was also asked.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. Were you going to get the tamping stick to put the cartridge in. After you put the dynamite in you put the cartridge in and you were making the cartridge to put in the hole?

A. Yes, sir.

Q. Did you go for the tamping stick to put the cartridge in?

A. Just I say I go get the stick, he said, 'all right, you can go', when I went it exploded, I have no chance to get it.

Q. The explosion happened too quick?

A. Yes, sir.

$*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*\quad*$

Q. You didn't tamp the cartridge do you; you fasten it to the dynamite?

A. Yes, sir.

Q. That goes on top of the dynamite?

A. Yes, sir.

Q. You didn't tamp that; that has a cap on it and if you tamp that the cartridge will go off and explode the dynamite?

A. Yes, sir.

Q. You didn't tamp the cartridge at all?

A. No.

Q. You push the cartridge in with a stick?

A. Never push that time cartridge.

Q. Mr. Troutman asked you whether you tamped the cartridge if the hole is charged, didn't you push the cartridge in with a tamping stick?

A. Yes, sir.''

The last quotation we also understand (subject to the right of the compensation authorities to find otherwise) to relate to general practice and not to what was done immediately before the explosion.

It was agreed by counsel for both sides in the court below that the case should be considered there as if the referee and the board had found that the hole was made in coal and not in slate or rock, rule 30 making a distinction.

The evidence of two other witnesses was received without objection (and was therefore proper for consideration: Poluski v. Glen Alden Coal Co. 286 Pa. 473) to the effect that Bonasavage said to them, shortly after the explosion, that decedent was tamping the hole and the shot went off; that he would not wait to use the stick.

The violation of rule 30, a misdemeanor, must be

proved by the preponderance of evidence; Floyd v. Paulton Coal Co., 94 Pa. Superior Ct. 1. As the learned court below concluded that the finding of the board was equivalent to a finding that death resulted from "ramming a tight cartridge into the hole in coal with an iron tamping bar" in violation of rule 30 (which, in its former opinion on the same evidence, the court stated was not the fact) we again quote the finding of the board for comparison. It is: "That on this day and place, while tamping dynamite in a hole with an iron drill, the dynamite exploded, instantly killing him." It will be observed that neither the referee nor the board found that a tight cartridge was used. The court added the finding of the fact that the witness had prepared the dynamite with a detonating cap; and that he "had prepared the cartridge," and had delivered it to decedent and that decedent had inserted the prepared cartridge into the hole. While we agree with the learned court that, in the popular sense, "tamping" and "ramming" may be considered synonymous (words not technical are to be construed in their popular sense in interpreting statutes: Marsh v. Groner, 258 Pa. 473, 478; Blake v. Wilson, 268 Pa. 469, 478; McCully's Est., 269 Pa. 122, 126) ; we can find no authority empowering the common pleas to put on the findings of the compensation authorities an interpretation which they will not bear save by the aid of essential supplementary findings of fact made by the court; on the contrary, the fact-finding body is the referee or the board: Callihan v. Montgomery, 272 Pa. 56; Houlehan v. Pullman Co., 280 Pa. 402. For want of power in the court to substitute its findings of fact for those of the board, we must reverse the order appealed from.

Order reversed; record remitted for further proceedings.