## Gima, Appellant, *v.* Hudson Coal Company.

Argued January 18, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. Marianelli,* for appellant.—Rule 29 of the Anthracite Mine Law providing that the manner of firing and using high explosives shall be in accordance with special rules furnished by the manufacturer of the same, is a

delegation of legislative power in violation of the Constitution of Pennsylvania.

It is proper to delegate power to public officials, but this is no precedent for delegating it to private corporations.

The reasonableness of the rules is immaterial.

*John P. Kelly,* with him *Rudolph S. Houck* and *H. T. Newcomb,* for appellee.—It will not be questioned that in a general sense it is within the competence of the legislature to enact such a law under the police power of the Commonwealth: Plymouth Coal Co. v. Penna., 232 U. S. 531.

If the power sought to be delegated is not a legislative power, it does not fall under the ban of section 1, article II, of the Constitution, whether it be delegated to a public officer or to a private person: Locke's App., 72 Pa. 491; Mill Creek Coal Co. v. Curran, 244 Pa. 496.

Standards may be designated outside of the law: Com. v. Alderman, 275 Pa. 483; Com. v. Sweeney, 61 Pa. Superior Ct. 367.

PER CURIAM, March 20, 1933:

Paul Gima was injured in an explosion in the mine of defendant coal company and filed a claim under the provisions of the Workmen's Compensation Act. The referee refused to allow compensation, for the reason that the accident resulted from a violation of Rule 29, article XII, of the Anthracite Mine Law, 1891, P. L. 176, inasmuch as claimant returned to the face of the mine in less than twelve hours after he had reason to believe a misfire had occurred in one of the holes in which high explosives were being discharged. The referee's findings of fact and conclusions of law were sustained by the Workmen's Compensation Board but reversed by the Court of Common Pleas of Lackawanna County on the ground that claimant did not know he was returning to a misfire, and that his act was merely a negligent per-

formance of a duty in the course of his employment for which he was entitled to compensation. Upon appeal to the Superior Court, the judgment of the court of common pleas was reversed and the order of the Workmen's Compensation Board, affirming disallowance of compensation by the referee, reinstated and affirmed. The opinion of the Superior Court considered the validity of Rule 29 of article XII of the Act of June 2, 1891, supra, and determined it was not in violation of article II, section 1, of the Constitution of Pennsylvania, as contended by plaintiff. The appeal before us involves only the decision on that phase of the case. After careful consideration of the matter we are of opinion the Superior Court correctly decided the issue and we accordingly affirm its judgment on the following excerpts from the thorough and convincing opinion of Judge KELLER: 106 Pa. Superior Ct. 288. After stating the facts as above indicated, the learned judge discusses and determines the pertinent constitutional questions involved as follows:

"The constitutional provision relied upon [by plaintiff to sustain his contention] is article II, section 1: 'The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.' Almost the same phrase is found in the federal Constitution, article I, section 1: 'All legislative power herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives.' )

"The appellee contends that Rule 29, of article XII, of the Anthracite Mine Law, (printed in the margin *),

---

* "Note 1. 'Rule 29. When high explosives other than gunpowder are used in any mine, the manner of storing, keeping, moving, charging and firing or in any manner using such explosives, shall be in accordance with special rules as furnished by the manufacturers of the same. The said rules shall be endorsed with his or their official signature and shall be approved by the owner, operator or superintendent of the mine in which such explosives are used.' "

violated the constitutional provision just above quoted, in that it amounts to a delegation of the legislative power vested in the General Assembly.

"The Anthracite Mine Law was not enacted for the benefit of the coal operators. It is a measure designed and enacted, primarily, to provide for the health and safety of persons employed in and about the anthracite coal mines. In conjunction with the Bituminous Mine Law it seeks to throw around the miners of coal in this State every safeguard and protection that is possible. It has been on our statute books for over forty years, and has been of incalculable benefit to those engaged in the hazardous occupation of mining coal. To destroy the safeguard and protection of this law in order to deal liberally in the allowance of compensation to a few men who were injured by failing to comply with its salutary provisions, would be a most short sighted policy, which should not be adopted unless required by the plain mandate of the Constitution. Fortunately, we do not feel compelled so to construe the law.

"In Locke's App., 72 Pa. 491, where the same provision in our immediately preceding Constitution was under consideration, in reference to a local option act, the court overruled the earlier case of Parker v. Com., 6 Pa. 507, and, speaking through Mr. Justice AGNEW said: 'The character of this law is precisely that of hundreds of others, which the legislative will makes dependent on some future act or fact for its operation. To assert that a law is less than a law because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of affairs not yet developed, or to things future, and impossible to be fully known. What is more common than to appoint commissioners under a law to determine things upon the decision of which the act is to operate in one way or another? The courts exercise powers dependent on their own discretion. Take the case of granting a license to keep an

inn and sell liquor. The judge determines whether the license is necessary, and if not necessary, the law says to the applicant, "no license." The law takes effect just as the judge determines, yet who says it is the court that legislates? Though contingent in form, the law is mandatory throughout in all it requires, and all it determines. That is not less an act of sovereign power, which says to the subject, do this, and that shall follow; do that, and another thing shall follow. To the subject a discretion of acting is given, and as he decides, the law pronounces the consequences. It is the sovereign which gives the law, not the subject. Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. Hence the necessity of the municipal divisions of the State into counties, townships, cities, wards, boroughs and districts, to which is committed the power of determining many matters necessary, or merely useful, to the local welfare. If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is unknown, uncertain and contingent can be the subject of law." See also McGonnell's License, 209 Pa. 327; Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Foster Twp. Road Tax, 32 Pa. Superior Court 51.

"Following the Locke decision, we have had much legislation which does not delegate the power of the General Assembly to make laws, but does delegate to some person or body the power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Thus the legislature has created the Public Service Commission its agent to do that very thing with reference to the regulation and supervision of public service companies and their facilities and rates. The Workmen's Compensation Board has been formed to assist in the determination of facts and the application of the law to the facts so found in the realm of injury occurring in industry. The Department of Labor and Industry is given authority to adopt rules and regulations for the better protection of workers in establishments. See Hess v. Union Indemnity Co., 100 Pa. Superior Ct. 108; Shumkas v. P. & R. C. & I. Co., 101 Pa. Superior Ct. 401; Baun v. U. G. I. C. Co., 106 Pa. Superior Ct. 282. The Department of Agriculture (State Live Stock Sanitary Board) has power to adopt and enforce rules for the examination and testing of cattle, and quarantining of diseased cattle: Com. v. Falk, 59 Pa. Superior Ct. 217. The Department of Health may make and enforce rules and regulations designed for the protection of the public health and the quarantining of communicable diseases. (Acts of April 27, 1905, P. L. 312; April 22, 1905, P. L. 260; April 7, 1927, P. L. 154; Com. v. Emmers, 221 Pa. 298, 305; Dixon v. Sheffer, 46 Pa. Superior Ct. 452.) We have legislative authority for the rules and regulations to enforce the Food and Drug Laws: Com. v. Sweeney, 61 Pa. Superior Ct. 367; the use and sale of narcotic drugs; the manufacture and sale of oleomargarine and butter substitutes; the granting of licenses to manufacture industrial alcohol; the censoring of moving picture films: Buffalo Branch M. F. C. v. Breitinger, 250 Pa. 225; the Motor Vehicle Code of June 22, 1931, P. L. 751, with its special powers relative to the licensing of operators (section 608), the suspen-

sion of licenses (section 615), regulation of road signs and markings (sections 1105, 1107), the establishment of through highways (section 1112), etc.; the change of width and location of state highways by the Secretary of Highways with the approval of the Governor (Act of June 1, 1911, P. L. 468, section 8; Penn Builders v. Blair Co., 302 Pa. 300); the State Board of Education may grant or withhold approval of annexation of territory to a city: In re Annexation of Baldwin Twp., 103 Pa. Superior Ct. 106, affirmed by the Supreme Court; and many other laws along similar lines, which do not constitute a delegation of legislative power, but grant some person or body the power to determine some fact or state of things in connection with which the law as enacted by the legislature takes effect. As was trenchantly said by Chief Justice BLACK in Moers v. City of Reading, 21 Pa. 188, 202, in discussing the same constitutional provision, 'Half the statutes in our books are in the alternative depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law.'

"Both the Anthracite and Bituminous Mine Laws are replete with instances of powers granted to mine bosses, mine foremen, mine inspectors, and similar officials who do not legislate, but who are authorized to do certain things and give certain orders which must be obeyed by the miners and their laborers, and violation of which constitutes an offense against the mine laws. The power to establish and approve certain rules for the storage, firing, use, etc., of high explosives, is no more a delegation of legislative power than the determination of what places in the mine are safe to work in (rules 5, 34); the granting of permission to fire a blast, where locked safety lamps are used (rule 11); the fixing of the number of persons who may be hoisted or lowered at one time in a mine (rule 17); the determination whether a miner is

competent to blast coal, etc. (rules 35, 36); the fixing of a safe steam pressure (rule 39); and none of these are different in character from the power formerly given the courts to pass upon licenses for the sale of intoxicating liquors, referred to and upheld in the opinion in the Locke Case. In fact a consideration of these different matters will show how impossible and unscientific it would be for the General Assembly to attempt to enact laws covering in detail all the matters thus wisely provided for. ......

"The similar provision in the federal Constitution, supra, has been construed the same way. See Field v. Clark, 143 U. S. 649, 694, which cited with approval Locke's App., supra, and Moers v. City of Reading, supra; Union Bridge Co. v. U. S., 204 U. S. 364; Monongahela Bridge v. U. S., 216 U. S. 177, 192. Inter alia, the Interstate Commerce Commission is authorized to promulgate regulations for the transportation, etc., of explosives and other dangerous articles, which shall be binding on all common carriers and violation of which is made an offense (U. S. Code, Title 18, sections 383, 386). The Postmaster General is given authority to distinguish between the several classes of mail matter and to provide for less frequent dispatches of mail matter to the third and fourth classes (U. S. Code, Title 29, section 559). The Secretary of the Treasury is authorized to make rules and regulations relative to internal revenue and the collection of duties (26 Stat. 826, 828; American Sugar Ref. Co. v. U. S., 211 U. S. 155). The Secretary of the Treasury, the Secretary of Agriculture and the Secretary of Commerce may make rules and regulations for carrying out sections 1 to 15 of the Food and Drug Laws (U. S. Code, Title 21, section 3). The Secretary of Agriculture is directed to fix uniform standards for tea (U. S. Code, Title 21, section 43; see also Buttfield v. Stranahan, 192 U. S. 470, 486); rules and regulation for the inspection of meat (U. S. Code, Title 21, section 71); for the shipment of tuberculous cattle (U. S.

488

Code, Title 21, section 116); for foot and mouth disease (U. S. Code, Title 21, section 120); and for quarantining cattle and live stock (U. S. Code, Title 21, section 123); and the Secretary of the Navy is authorized to issue rules and regulations governing the naval forces which shall have the authority of law (Ex parte Reed, 100 U. S. 13); McDermott v. Manlove, 104 Pa. Superior Ct. 560. See also Sproles v. Binford, U. D. (May 23, 1932.).

"The General Assembly cannot be expected to enact laws which shall in themselves keep abreast of every advance of science and invention in the explosive line, any more than it can of itself determine when a working place is free of gas and fit to work in; but it has established a means by which such advances can be utilized and made safe in mines, and in Rule 29 it has delegated its power to determine the safe method to store, charge, fire and use such explosives to the manufacturer and the mine owner jointly, knowing that they will not for their own interest err on the side of danger, and has established a method for making known such determination to the miners and laborers who use them by posting and publishing and has declared that a use of such high explosives contrary to such determination, thus posted and published, is a violation of law. In doing so, the General Assembly has legislated—not the powder manufacturer or coal operator—no legislative power or authority has been delegated to them."

The judgment of the Superior Court is affirmed.