## Commonwealth v. Stoner

*J. Glenn Benedict*, district attorney, for Commonwealth.

*A. J. White Hutton*, for defendant.

DAVISON, P. J., March 20, 1937.—This matter comes before us on an appeal from a summary conviction of defendant after hearing before John S. Gillan, Esq., a justice of the peace. He was charged with possession of two green skunk pelts in the closed season, contrary to section 602 of The Game Law of May 24, 1923, P. L. 359, it being alleged in the information that he had these pelts in his possession on November 3, 1936.

Section 601 of The Game Law has been amended several times, by the Act of May 2, 1929, P. L. 1255, by the Act of June 9, 1931, P. L. 455, and by the Act of May 22, 1933, P. L. 901, which is the last amendment. Section 602 of said act has not been amended. These two sections, as they now stand, are as follows:

"Section 601. Open Season for Fur-Bearing Animals. —The open reason [season] for fur-bearing animals, excepting beavers and muskrats, is from the first day of November to the last day of February next following.

The open season for muskrats is from the first day of December to the last day of February, both days inclusive. There is no open season for beavers."

"Section 602. Unlawful Taking, Killing, Possession, Etc., of Fur-Bearing Animals.—Except as otherwise provided in this act, it is unlawful for any person to take or kill or wound or capture, or attempt to take or kill or wound or capture, any fur-bearing animal except during the open season, or to have in possession the green pelt of any fur-bearing animal, or any part thereof, except during the open season therefor and for fifteen days thereafter.

"It is unlawful to buy or sell, or offer to buy or sell, or to ship out of this State, any fur-bearing animal, or any part thereof, knowing the same to have been unlawfully taken.

"This section does not prohibit the possession at any time of fur-bearing animals killed or taken outside of this State, or the possession of the tanned or cured skins, or any parts thereof, of fur-bearing animals not unlawfully killed, or the possession of live fur-bearing animals legally taken within this State during the open season."

Section 509 of The Game Law has been amended by Act of May 14, 1925, P. L. 752, and by Act of June 9, 1931, P. L. 455, and as thus amended is as follows, insofar as it pertains to the question now before us:

"Section 509. Removal of Game; Removal of Protection; Changing Seasons and Bag Limits.—When it is proven to the satisfaction of the board that game birds or game animals or fur-bearing animals are materially destroying property, or otherwise becoming a nuisance, or the sexes are not balanced properly, or the natural food supply is insufficient, or that hunting or trapping, in addition to the regular open season provided by this act, may be permitted without jeopardizing the future supply of game or fur-bearing animals of any kind in any section of the Commonwealth, the board may at any time remove

or have removed such animals or birds from that section, or may direct or authorize the killing of such birds or animals, or grant an extension of the open season, or permit additional hunting or trapping, under such rules governing seasons, bag limits, methods of taking and other regulations as the case may require, regardless of protection afforded or open seasons or bag limits fixed by this act. . . .

"To aid in the better protection of game or fur-bearing animals in any part of the Commonwealth, the board may also reduce open seasons and bag limits, or may close seasons, as in their judgment may be necessary to guarantee a future supply of such birds or animals, of either sex or both sexes, in any part of or throughout the entire Commonwealth. . . .

"It is unlawful for any person to violate any of the rules and regulations adopted by the board for the preservation of game birds or game animals or fur-bearing animals, or to take such birds or animals at a time or in any number or manner, or of any kind or sex, contrary to such rules and regulations."

In section 101 of The Game Law fur-bearing animals are defined to include "(f) the skunk, commonly called the polecat".

The Board of Game Commissioners of the Commonwealth of Pennsylvania on July 1, 1936, adopted the following resolution:

"Whereas, it is proven to the satisfaction of the Board of Game Commissioners that to aid in the better protection of game and fur-bearing animals in the Commonwealth of Pennsylvania, it is in the Board's judgment necessary in the interest of a future supply of game and fur-bearing animals, to reduce certain open seasons and bag limits and to establish small game possession limits governing the hunting and killing of various game birds, game animals and fur-bearing animals during 1936 as hereinafter set forth; and that an extension of the open

season, as provided by law, may be permitted for certain other game and fur-bearing animals hereinafter named without jeopardizing the future supply thereof, under the powers and authority vested in the Board of Game Commissioners in accordance with the provisions of Section 509 of the Act of Assembly, approved May 24, 1923, P. L. 359, as amended, entitled 'An Act concerning game and other wild birds and wild animals; and amending, revising, consolidating and changing the laws relating thereto';

"Therefore be it resolved, That the open season, bag limits, and small game possession limits other than migratory birds, governing the hunting, killing and taking of game birds, game animals and fur-bearing animals shall be and is hereby fixed as below indicated, Sundays excepted in the case of game birds and animals:

| *"Fur-bearers* | *Day Season* | *Open Seasons* |
| --- | --- | --- |
| Minks, Opossums, Skunks | Unlimited | Nov. 6-Feb. 28, 1937 |
| Muskrats, (by trapping only) | Unlimited | Dec. 1-March 15, 1937 |
| Beavers, (by trapping only) | 3.......3 | Mar. 1-March 15, 1937" |

It will be noted that by this resolution the open season for skunks was fixed as beginning on November 6th, when by section 601 as last amended it was fixed as beginning on November 1st. This raises the questions now before us, it being stated by the learned counsel for defendant that he is not raising any question as to the proper promulgation of this resolution, but as to the constitutionality of section 509 as an unlawful delegation of power, or, if it is held to be constitutional, as a lawful exercise of that power. The question, as it is stated in his able brief, is:

"A. Is section 509 of the act of the Game Law of May 24, 1923, P. L. 359, as amended by the Act of May 14, 1925, P. L. 752, and finally amended by the Act of June 9, 1931, P. L. 455, an unlawful delegation of legislative power and violative of the provisions of section 1, art. II, of the Constitution of Pennsylvania?

"B. Assuming that section 509 as amended is constitutional, was the resolution of the Board of Game Commis-

sioners of the Commonwealth of Pennsylvania, adopted July 1, 1936, a lawful exercise of the power so conferred upon it?"

The first question raised is as to the constitutionality of the delegation of power, under said section 509, for if that section creates an unlawful delegation of legislative power to the Board of Game Commissioners then there was not in that board any authority to change the open season for skunks, and that open season would remain as fixed in said section 601, beginning on November 1st and not on November 6th, as fixed by said resolution, and, as this offense was charged as of November 3rd, it would be no offense under that section. Was the delegation of power by section 509 constitutional?

We have many decisions in Pennsylvania on this question which interpret the delegation of power according to the facts of each case, that delegation being upheld in many of them and decided to be illegal in many others, so there is not any hard and fast rule declaring that there can be no delegation of legislative power in this State. This is well illustrated in the briefs of the district attorney and the counsel for defendant in the instant case. Counsel for defendant cites, and to some extent depends on, the decision in Commonwealth v. Madison, 16 D. & C. 824, where Judge Shull held section 706 of the act we are now considering unconstitutional. The district attorney, on the other hand, cites to us Commonwealth v. Gould, 18 D. & C. 135, where Judge Lewis holds the same section to be constitutional. Here we have two opinions of learned judges, both of whom we know and for both of whom we have high regard as able judges, deciding the same question absolutely differently. We have read both of these opinions very carefully, but we find ourself in accord with the opinion of Judge Lewis rather than with that of Judge Shull.

In Gima v. Hudson Coal Co., 310 Pa. 480, 484, the matter of delegation of legislative power is fully de-

scribed in a most able per curiam opinion. There it is said, quoting from Locke's Appeal, 72 Pa. 491:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government."

The quotation from Locke's Appeal, supra, cited as law in Gima v. Hudson Coal Co., supra, is enlightening as to what constitutes delegation of power, and is as follows:

"In Locke's App., 72 Pa. 491, where the same provision in our immediately preceding Constitution was under consideration, in reference to a local option act, the court overruled the earlier case of Parker v. Com., 6 Pa. 507, and, speaking through Mr. Justice Agnew said: 'The character of this law is precisely that of hundreds of others, which the legislative will makes dependent on some future act or fact for its operation. To assert that a law is less than a law because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of affairs not yet developed, or to things future, and impossible to be fully known. What is more common than to appoint commissioners under a law to determine things upon the decision of which the act is to operate in one way or another? The courts exercise powers dependent on their own discretion. Take the case of granting a license to keep an inn and sell liquor. The judge determines whether the license is necessary, and if not necessary, the law says to the applicant, "no license". The law takes effect just as the judge determines, yet who says it is the court that legislates? Though contingent in form, the law is mandatory throughout in all it requires, and all it determines. That is not less an act of sovereign power, which says to the subject, do this, and that shall follow; do that, and another thing shall

follow. To the subject a discretion of acting is given, and as he decides, the law pronounces the consequences. It is the sovereign which gives the law, not the subject. Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. Hence the necessity of the municipal divisions of the State into counties, townships, cities, wards, boroughs and districts, to which is committed the power of determining many matters necessary, or merely useful, to the local welfare. If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is unknown, uncertain and contingent can be the subject of law."

In the case of Gima v. Hudson Coal Co., supra, the court says:

"Following the Locke decision, we have much legislation which does not delegate the power of the General Assembly to make laws, but does delegate to some person or body the power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Thus the legislature has created the Public Service Commission its agent to do that very thing with reference to the regulation and supervision of public service companies and their facilities and rates. The Workmen's Compensation Board has been formed

to assist in the determination of facts and the application of the law to the facts so found in the realm of injury occurring in industry. The Department of Labor and Industry is given authority to adopt rules and regulations for the better protection of workers in establishments. See Hess v. Union Indemnity Co., 100 Pa. Superior Ct. 108; Shumkas v. P. & R . C. & I. Co., 101 Pa. Superior Ct. 401; Baun v. U. G. I. C. Co., 106 Pa. Superior Ct. 282. The Department of Agriculture (State Live Stock Sanitary Board) has power to adopt and enforce rules for the examination and testing of cattle, and quarantining of diseased cattle: Commonwealth v. Falk, 59 Pa. Superior Ct. 217. The Department of Health may make and enforce rules and regulations designed for the protection of the public health and the quarantining of communicable diseases. (Acts of April 27, 1905, P. L. 312; April 22, 1905, P. L. 260; April 7, 1927, P. L. 154; Commonwealth v. Emmers, 221 Pa. 298, 305; Dixon v. Sheffer, 46 Pa. Superior Ct. 452.) We have legislative authority for the rules and regulations to enforce the Food and Drug Laws; Commonwealth v. Sweeney, 61 Pa. Superior Ct. 367; the use and sale of narcotic drugs; the manufacture and sale of oleomargarine and butter substitutes; the granting of licenses to manufacture industrial alcohol; the censoring of moving picture films; Buffalo Branch M. F. C. v. Breitinger, 250 Pa. 225; The Motor Vehicle Code of June 22, 1931, P. L. 751, with its special powers relative to the licensing of operators (section 608), the suspension of licenses (section 615), regulation of road signs and markings (sections 1105, 1107), the establishment of through highways (section 1112), etc.; the change of width and location of state highways by the Secretary of Highways with the approval of the Governor (Act of June 1, 1911, P. L. 468, section 8; Penn Builders v. Blair Co., 302 Pa. 300) ; the State Board of Education may grant or withhold approval of annexation of territory to a city: In re Annexation of Baldwin Twp., 103

Pa. Superior Ct. 106, affirmed by the Supreme Court; and many other laws along similar lines, which do not constitute a delegation of legislative power, but grant some person or body the power to determine some fact or state of things in connection with which the law as enacted by the legislature takes effect. As was trenchantly said by Chief Justice Black in Moers v. City of Reading, 21 Pa. 188, 202, in discussing the same constitutional provision, 'Half the statutes in our books are in the alternative depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law.' "

See also Commonwealth v. Falk (No. 1), 59 Pa. Superior Ct. 217, and Baldwin Township's Annexation, 305 Pa. 490.

The tendency of the courts in recent years has been to uphold a delegation of legislative power not only to the executive but to commissions and to other bodies created by the legislature to examine into and carry out certain enactments as they find the necessity for their application to the facts. This is what we find in the instant case and we believe we would be unduly limiting the power of the legislature so to act if we held this action an illegal exercise of legislative power. We will, therefore, uphold the constitutionality of the said section 509.

The other question raised is as to whether the resolution of the game commissioners was a lawful exercise of the power conferred on it. It is true the said resolution does not set forth specifically its reasons for changing the open season for skunks, but we do not believe that it is necessary for it to set out its reasons for this action in its resolution. Section 509 provides that when certain facts are proven to the satisfaction of the board it may then do certain things, among which is reducing the open season for fur-bearing animals, which include skunks,

The board, acting under that authority, declared that "it is proven to the satisfaction of the Board of Game Commissioners that to aid in the better protection of game and fur-bearing animals in the Commonwealth of Pennsylvania, it is in the board's judgment necessary in the interest of a future supply of game and fur-bearing animals to reduce certain open seasons."

We are of the opinion that this resolution is sufficient under said section 509, where it is provided:

"To aid in the better protection of game or fur-bearing animals in any part of the Commonwealth, the board may also reduce open seasons . . . as in their judgment may be necessary to guarantee a future supply of such birds or animals".

It was not necessary for the board in its resolution to set forth specifically its reasons any further than it did, and we hold the resolution proper and within the power of the said board.

This matter was heard before the court on agreement of counsel that there was no dispute as to facts but that it was to be determined on the law as found by the court. We, therefore, adjudge said defendant, Harry Stoner, guilty and the sentence of the court is that he pay the costs of prosecution and a fine of $20 for the use of the County of Franklin, and, upon failure immediately to pay said fine and costs, to be imprisoned in the county jail of the County of Franklin for one day for each dollar of fine imposed and costs of prosecution.

From Albert Strite, Chambersburg.