## Commonwealth v. Paschall

*James W. Reynolds*, assistant district attorney, and *Carl B. Shelley*, district attorney, for Commonwealth.

*Maurice R. Metzger* of *Metzger & Wickersham*, for defendant.

*Paul G. Smith*, city solicitor, for the City of Harrisburg.

WOODSIDE, J., July 13, 1942.—This matter comes before us on a motion to quash an indictment in which defendant is alleged to have violated an order of the

Board of Health of the City of Harrisburg "in that she did ᐧ . . . offer for sale and have in her possession with intent to sell a number of pounds of country butter . . . which said butter was not prepared from pasteurized milk in dairy plant approved and licensed by the Board of Health of the said City of Harrisburg . . . contrary to the form of the Act of the General Assembly, etc."

The regulation of the board of health adopted on August 26, 1941, is set forth in the indictment as follows:

"Whereas: There is in the counties of York, Cumberland, Adams, Lebanon and Lancaster an epidemic of acute anterior poliomyelitis

"And Whereas: There is great danger that said epidemic will spread to adjacent counties

"And Whereas: The Board of Health of the City of Harrisburg, Pennsylvania, feels that an emergency exists and deems it necessary in order to prevent the spread of such disease to prohibit the importation and/or sale of certain articles of food within the city.

"Now Therefore Be It Resolved: That any person or persons are hereby forbidden to sell, offer for sale, or have in their possession with intent to sell in the City of Harrisburg, Pennsylvania, the following articles of food from the counties of York, Cumberland, Adams, Lebanon or Lancaster: Lettuce, celery, cold meats, salads, pickles, pickled beets, and other similar articles of food and general delicatessen products; bread, pastries, cakes, pies and general baked products except those prepared and packaged by a bakery plant approved by the State of Pennsylvania and the Board of Health of the City of Harrisburg, Pennsylvania.

"And Be It Further Resolved: That no person or persons from any county may sell, offer for sale, or have in their possession with intent to sell, country butter, smear case, cup cheese, buttermilk, milk, goat's milk, chocolate milk, cheese or any other milk product

except those prepared from pasteurized milk in a dairy approved and licensed by the Board of Health of the City of Harrisburg, Pennsylvania.

"And Be It Further Resolved: That no person or persons shall import any of the articles of food hereinabove referred to from the counties of York, Cumberland, Adams, Lebanon or Lancaster."

The contention of defendant in the motion to quash is that the statute, under which the regulation of the board of health was adopted, did not come complete from the legislative halls, but authorized the adoption of orders and regulations, the violation of which orders is made a misdemeanor and that the penalty is not imposed for failure to conform to the statute.

On its face the motion to quash appears to attack generally the validity of the rule-making power of administrative agencies (the legality of which power is now settled), but the argument of counsel for the Commonwealth and defendant is based on the theory of the inadequacy of the standards incorporated in the statute, to which the orders and regulations of the board were required to conform. The contention is that the statute in question involves an unlawful delegation of legislative power.

Section 2308 of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-2308, provides, inter alia, that "The board of health shall have power to make and enforce all necessary orders and regulations to prevent the introduction of communicable diseases . . . ."

This is the only standard provided for by the act and counsel for defendant contends that this is no standard whatever but permits a board of health to establish its own rules and regulations as its whims and caprices may dictate.

The delegation of legislative power may be lawful in one statute and unlawful in another. It is now clearly established by the cases that there are at least

three classes of statutes which fall into the category of the delegation of legislative power. One such class involves cases of the management of public property which may be eliminated from consideration. This class of cases is illustrated by United States v. Grimaud, 220 U. S. 506.

A second class consists of those statutes which confer power upon administrative agencies to determine facts which are of a scientific nature, not involving a personal decision as to whether the facts should be considered within the general policy of the law.

Thus it has been held valid for the legislature to provide that the use of explosives in mines shall be regulated by the rules adopted by the manufacturer of the explosives (Gima v. Hudson Coal Co., 310 Pa. 480) ; to empower the Department of Agriculture to determine what animal diseases are communicable (Commonwealth v. Falk (No. 1), 59 Pa. Superior Ct. 217) ; to adopt as standards of purity for drugs the formulæ of the United States Pharmacopœia (Commonwealth v. Sweeney, 61 Pa. Superior Ct. 367) ; to authorize an administrative official to fix uniform standards of purity for tea imported (Buttfield v. Stranahan, 192 U. S. 470) ; to determine whether certain bridges obstruct navigation (Union Bridge Co. v. United States, 204 U. S. 364) ; to establish standards of purity and safety for illuminating oil (Red "C" Oil Manufacturing Co. v. Board of Agriculture of North Carolina, 222 U. S. 380) ; and to ascertain the number of policemen and firemen necessary to protect the public assembled in large crowds at public games and exhibitions (American Baseball Club of Philadelphia et al. v. Philadelphia et al., 312 Pa. 311) : Holgate Bros. Co. et al. v. Bashore et al., 331 Pa. 255, 261.

The third class of statutes is that where no management is involved and the facts to be determined by the administrative agencies are not such as conform to a scientific standard and where the statutes must con-

tain primary standards to which the regulations of the agencies must conform. Illustrative of such cases are Holgate Bros. Co. et al. v. Bashore et al., supra, Rohrer v. Milk Control Board, 322 Pa. 257, and A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U. S. 495.

In our opinion this statute and the order or regulation adopted by the board of health falls within the class of cases where the facts to be determined are of a scientific nature not involving personal judgment.

Infantile paralysis is a communicable disease. It is so designated by section 1 of the Act of June 28, 1923, P. L. 888, 35 PS §511. No personal decision is involved to come to this conclusion. That this disease will spread unless adequate precaution is taken we shall accept as a scientific fact. Public policy requires the proper authorities to take steps to prevent its spread. While these statutes, where the determination of a scientific fact is involved, must contain some standard, there is clearly a question of degree to which the legislature is required to go in setting up the standard. In our opinion the standard in this statute "prevent the introduction of communicable diseases," is sufficient. The only question is "will the regulation accomplish this or is it an unreasonable exercise of the police power?"

Whether it has been established that infantile paralysis is spread through milk need not be determined at this time. It is a scientific fact that communicable diseases may be spread through butter and other milk products. If by any chance the board might adopt a regulation which had no relation to the spread of communicable diseases, such regulation could not be sustained and would fall, not on the theory that the statute was unconstitutional but because the board did not conform to the standard prescribed in the statute.

Acts are presumed to be constitutional: Commonwealth v. Moir, 199 Pa. 534.

Furthermore, the act concerns public health. The health of the community is of paramount importance,

and it is vital that power should be given those in authority properly to deal with the problems. Epidemics require prompt, and at times, drastic action on the part of the officials, and problems thus created and the method of meeting them cannot always be foreseen nor described in minute detail by the legislature in laying down the standards governing the boards of health.

Section 2308 of The Third Class City Law, supra, provides: "The board of health shall have power to make and enforce all necessary *orders and regulations* to prevent introduction of communicable diseases . . ." And section 2360, 53 PS §12198-2360, provides: "Any person violating any provision of this article or any *order* of said board of health, made under the authority of the same, or of any law or ordinance therein referred to . . . shall be guilty of a misdemeanor . . ." (Italics supplied.)

It is argued by defendant that, because the Board of Health of the City of Harrisburg called the above-quoted resolution a "regulation" and not an "order," no prosecution can be brought for its violation. The mere fact that the board called it a "regulation" rather than an "order" is not material: Commonwealth ex rel. v. Bitner, 294 Pa. 549.

Whether there is a difference between a "regulation" and an "order" we are not now called upon to determine.

No provision has been made in the law for the publishing of any rules or regulations of the board of health of a third class city.

The law contains no provision concerning the time when any rules shall become effective, and presumably it would be immediately.

The board of health itself is not elected by the people and is actually created by an ordinance of the city council: Section 2301 of The Third Class City Law, 53 PS §12198-2301.

It would be a harsh rule if farmers and merchants

who have been selling "country" butter for years would suddenly find themselves under arrest for the commission of a misdemeanor because by action of a city board of health the previous night their seemingly innocent act was made a crime.

To prevent this the action of the board of health must be promulgated as a matter of public policy even though no specific method of promulgation can be found in the statute.

The action of defendant in disregarding the regulation of the board must be willful, "otherwise, a citizen might suddenly be charged criminally for the violation of an order or regulation when he had no knowledge and no means of knowing that such was in force": Commonwealth v. Grube, 20 Dist. R. 212, 214.

If prior to the arrest of defendant she was advised of the action of the board of health and ordered to discontinue the sale of butter in violation of the regulation, it would be sufficient promulgation of the action of the board, and her failure to comply with such order would clearly be a violation of section 2360 of The Third Class City Law. At least the action of the board must be promulgated in some manner.

Defendant being charged with "willfully" and "knowingly" violating an "order" of the board of health, we consider it unnecessary to set forth further in the indictment concerning the promulgation of the action of the board. This is a matter of proof which could be elucidated upon the trial. If the Commonwealth fails to prove that the action of the board depended upon was an "order" of the board of health as provided for by the act or fails to show that the action of the board was duly promulgated, it would seem there can be no conviction. But be that as it may, that feature of the case does not arise at this time: Commonwealth v. Grube, 20 Dist. R. 755, 757.

And now, to wit, July 13, 1942, the motion to quash is discharged.